Thank you. Thank you, your honors.  I'm suffering from a little laryngitis today, so hopefully my water won't be too distracting. May it please the court, counsel, my name is David Stanton. I'm here on behalf of the appellants, Corporal Bartolo Ortiz and Officer Brenton Pepper. And the reason I'm here today is because I'm asking this court to grant qualified immunity to my clients based on the second prong of the qualified immunity test, and that is whether their conduct violated a clearly established constitutional right under the Fourth Amendment. There are two claims at issue. One, a claim that Ortiz used excessive force against Powell at the time of his arrest, which was July 8th, 2020. The second claim is that Officer Pepper failed to intervene during that arrest. The facts of this case that are part of this lawsuit, part of the lawsuit relevant to this motion, and there are other parts to this case that are not before this court. But... Counsel, I do... Counsel, can I interrupt you? Sorry about that. I do have a question. And the summary judgment standard here is, I think, a concern for me. For example, you brief argued that Powell continued to resist after he was tackled to the ground. But we simply cannot assume that when the summary judgment standard requires that we view the evidence in the light most favorable to Powell and draw all reasonable inferences in his favor. So at a summary judgment stage, a jury could believe Powell's version of the facts. So tell me why that's wrong. Yes, Your Honor. And I completely... Thank you for the question. I completely agree that that is the summary judgment standard. However, there is an exception for evidence that is captured on video if it blatantly contradicts that presumption that would otherwise exist. By the way, can you tell me in what way that's true? I know that you're referencing the Scott v. Harris standard, and I understand that. But what exactly are you saying the video contradicts the version that was presented? Yes, Your Honor. And what the video shows is... And this is a very fast-moving arrest, obviously. But in a period of time compressed in less than 30 seconds, we see Powell go from taking a fighting stance and resisting Ortiz's efforts to subdue him after several baton strikes. He's tackled by Pepper. And I don't know if I'm looking at the right camera or not, but that's where the screen is. He is tackled by Pepper. At that very moment, while Ortiz is continuing with the baton strikes, there is one final strike on Powell's lower back. Powell is not placing his hands behind his back despite orders to do so. And I think that that's... Absolutely. Well, I've watched this video maybe dozens of times, and at one point, I see at least three officers that were on top of Powell, and at one point, Powell is not resisting. So according to Scott, that doesn't blatantly contradict Powell's version, does it? Or how does it? I think it does blatantly contradict because he was ordered to place his hands behind his back, and he did not do so. So counsel, on that, go ahead. At the point where Powell's right hand is visibly empty and both officers, Pepper and Ortiz are pulling that right arm behind his back, the left is already completely restrained. Why would it be reasonable intermediate force to be pressing the baton on Powell's neck with the weight of officer Ortiz's body? When at that point, he's completely prone, lying on his stomach, left hand is totally constrained. You have a third officer lying on the feet, you have an officer putting his body weight on the back. So tell me, how is that force reasonable? Yes, Your Honor, and... And why there's not even at least a reasonable dispute of fact that should go to a jury on that question. I... And I think it's important to make a distinction at this point in terms of the reasonableness of the conduct. And I know that there was a lot of discussion about that in the briefing. Our point is that there was no clearly established law saying that he couldn't do it. But if I look at... Let's say I look at Blankenhorn. It says, this same principle would also adequately put a reasonable officer on notice that punching Blankenhorn to free his arms when, in fact, he was not manipulating his arms and attempt to avoid being handcuffed was also a Fourth Amendment violation. Let's say I look at Young v. County of Los Angeles. Moreover, Young asserts that one of Wells' baton blows against him took place as Young lay face first on the ground. Were a jury to deem this assertion credible, it could readily conclude that the force was used far in excess of any safety concerns, reasonable or otherwise, that might have motivated Wells' alleged conduct. So those seem... I mean, Blankenhorn especially, we don't even have the argument about, oh, it's at too high a level of generality. This is exactly what we're talking about. Do you use force to free someone's arm when they are not manipulating their arm to avoid being handcuffed? That's exactly on point. And I believe that the facts of Blankenhorn put it in a different context. And in Blankenhorn, it was in a mall setting. And as I recall, there was just a minor claim of trespassing and Blankenhorn offered no resistance initially, then minor resistance, and then he was gang-tackled by a bunch of  So, counsel, on this issue, when I'm looking at the video, and I hope my citations to where right, I'm going to ask your friend this also, when I look at, I think it's 22 minutes and 11 seconds, where I see the plaintiff standing up and reaching with his left hand toward his left pocket, is that of any significance to you that the plaintiff is seen reaching for his pocket? It is of significance because even though there's a statement in Ortiz's report that he didn't see a weapon, he could not know whether there was a weapon. And once Powell was prone on the ground, he put his right hand outside of view and it could not be determined whether he was going to grab a weapon or not. There was no way of knowing whether he had one. Do you agree with the magistrate judge's statement in the R&R that the plaintiff had not committed any type of violent crime? Actually, he pled, and I believe that there's a judgment of conviction in the record, that he did plead guilty to attempted assault on a police officer. And that was because during the chase, he attempted to strike another officer's car with his vehicle, which is violent. And obviously, after he rolled his vehicle, got out and ran, he did take a fighting stance. So it was, I mean, going back to what a reasonable officer would believe, it's reasonable to assume that he was intending to resist arrest. So he was capable of violence and he did, in fact, resist. And I also want to bring up the point that everything that we see up until the point where he is handcuffed serves a legitimate law enforcement purpose, which was language used in the Zion case. Can I ask you, on the second after 22 and 11 seconds, 22 and 12 seconds, you see that Powell's left hand is visible and it's empty. And then four seconds later, 22 and 15 seconds, you see Powell's hands are both visible and they're both empty. And Officer Ortiz said, I put my gun in my holster because he wasn't armed. And if I look at your answer to the original complaint, it says that upon being placed on the ground and subdued, plaintiff stopped resisting the officers and that plaintiff was unarmed. Same with your answer to the first amended complaint. It says that shortly after being placed on the ground, a subdued plaintiff stopped resisting the officers. Yes, Your Honor. And I think the timing is critical and maybe that was an overgeneralization. We can see what happened in the video. It's clear. He stopped resisting after he was placed in handcuffs. But it's clear that his right hand had to be forced behind his back in order to apply the handcuffs. No question about that. Well, why wouldn't it be a reasonable question of fact that when he had his left arm completely restrained and he put his right arm under his face, it was to cushion because you can see from the video he's got abrasions on his cheek from the pavement that he was just cushioning his face. Why is that at least a reasonable jury can make a decision against you on that point that that wasn't actually resisting? And if it was resisting, it was reasonable resistance that the law doesn't allow this type of intermediate force in response. Right. And so I think that the issue of reasonableness goes to what the officers believed were reasonable and believing at the time. They were attempting to apply handcuffs. And I'm going to say every prone suspect who is placed on the ground, who is going to be placed in handcuffs, is going to come in contact with the ground in some manner. So we're not saying that it's unreasonable to place a suspect in a prone position on the ground. The only issue comes down to Ortiz's use of the baton to pin Powell's head down while other officers are placing Powell in handcuffs. So, counsel, you're out of town. You're out of time. We've taken up a lot of your time with questions. We'll give you a little bit of time for rebuttal. Thank you, Your Honor. I appreciate it. Good morning, Your Honors. Colin Tarleton, Pepperdine Law student on behalf of Plaintiff Appellee Jeremy Powell. So, first, I would like to discuss the question of the video evidence in this case, specifically the Vescovi-Harris standard. As Judge Mendoza correctly pointed out, the video evidence in this case, while it does clearly show most what happened in this, in the altercation, it does not blatantly contradict any of Mr. Powell's assertions as to the use of force and the degree of force used by Officers Ortiz and Pepper. Specifically, as well in the scope of review, we have, this is a limited interlocutory appeal, which means that we can only, this court can only reverse to the extent that this case turns on an issue of law. You're not alleging that the force used prior to Officer Pepper tackling Powell is excessive, are you? No, we are not, Your Honor. Okay. So at what point then, just when Officer Powell, Officer Pepper places Powell on the ground, is that the moment then? Tell me exactly when you're saying excessive force begins. The excessive force begins the moment that Mr. Powell was tackled to the ground, Your Honor. From that point, there are three baton strikes delivered by Officer Ortiz, and each of those strikes would be excessive force, because at that point, Mr. Powell ceased resisting. But when Powell is on the, Mr. Powell's on the ground, on his stomach, his right hand is under his torso, and the officers don't know if that's reaching for a weapon, if that's Yes, Your Honor, the officers don't know. However, up to that point beforehand, we can see, once the officers get out of the vehicle, they can see Mr. Powell is walking away with his hands in the air. And even after that, after his, Officer Ortiz rips his hoodie off of him, at any point before that moment, Mr. Powell had a chance to pull out a weapon if he was in possession of one. But the officers also knew that your client had engaged in extremely dangerous conduct by engaging in a high-speed chase with what I would describe as a very dangerous weapon, a car going 70 miles an hour and putting hundreds of lives at risk. Do you agree with that? Yes, Your Honor. Certainly, it was dangerous conduct. However, it was not inherently with an intent to harm. Well, I mean, the officers, all they knew was that your client had allegedly committed a number of crimes, and then for 20 minutes, let everybody on a high-speed chase, which put scores of people's lives at risk, correct? Correct, Your Honor. So at a high level, at other than a high level of generality, what case, because the Supreme put these officers on notice that with these facts, doing what they did violated a clearly established constitutional right? That would be Blankenhorn v. City of Orange, Your Honor. So you agree that the two cases the district court relied on, Zion and Jones, don't work? No, Your Honor. Those cases, while they involve a greater degree of force than what Mr. Powell experienced here, they both support a violation of a clearly established law here because they both show that violence against a suspect who is prone on the ground and not resisting can be a violation of a clearly established law. Although in Zion, they used deadly force, right? Yes, Your Honor. And in Jones, they tased him multiple times and I believe stomped on his head, right? Yes, Your Honor. So none of those things happened here, right? No, Your Honor. However, the tasering in Jones would be classified as a form of intermediate force, which is also the same level of force that baton strikes tend to be classified as, which is a form of force capable of inflicting significant pain and causing serious injury. So I do have a question. I think what Judge Bennett might be driving at, and I want to hear from you on this, which is sort of the problem that Powell is alleging he has at most, that his cheek was scraped and that his breath was temporarily restricted during the portion of arrest, not the sort of catastrophic kinds of instances we have in some of the other cases on point. I mean, I think that's part of the question. So what would you say to that line of questioning? Well, I would say that Mr. Powell does complain of ongoing head and neck pain from these injuries, and in addition to that, it is not the amount of injury that the person, the victim, sustains from the use of force that is the test of whether a right was clearly established and it was violated. It is the specific factual circumstances surrounding the use of force and the amount of force used that determines whether a clearly established law was violated. And so here we can see that the use of force was almost identical to what we saw in Blankenhorn versus City of Orange, where an officer punched a suspect in order to free their arm while they were on the ground, despite the suspects not having their arm under their body as a form of resistance. What should we do with the fact that the district court cited Blankenhorn for the general summary judgment standard on qualified immunity, but didn't actually cite it as the clearly established law? The magistrate judge did, but the district court didn't. Only relied on Zion and Jones, which you might say are distinguishable. You know, I'm not certain what the district court, the thought process was of the district court judge when deciding to write the opinion. However, we do agree that Jones and Zion should alone stand for enough of a proposition for prohibition of use of force against the non-resistant prone suspects to carry the day for Mr. Powell in this case as well. So, I think there seems to be an assumption here that if one officer loses, the other loses on qualified immunity. So why is that? Why would it be that even if the officer who is responsible for the injuries, even if he had qualified immunity, what level, at other than a high level of generality, what put the other officer on notice that he basically had to get in there and drag his partner off your client? Shouldn't there be a case that puts the intervener, a requirement that the case put the intervener on notice, that he has to use force and violence basically to stop the engagement? Well, your honor, the standard for failure to intervene is simply having that the officer that failed to intervene must have had a reasonable opportunity to intercede, which simply means that they must have been aware of the constitutional violation as it occurred. Right. But I mean, part of what you're saying is the officer who was inflicting the damage did so, and that there's something at that exact moment that his partner could have seen that would have put the partner on notice that I am violating the constitution by not stopping part three, because I just saw one and two, and I didn't know they were going to happen. So I couldn't stop one and two, but that I had to jump in and stop three. And what case would have put the partner on notice that his activity violated a clearly established constitutional right? Well, your honor, we don't have a case directly on point for failure to intercede, a very similar case. However, alarm bells should have been going off in officer Pepper's head the second that he stepped out of the car. We can see from the body cam footage that officer Ortiz was in a clearly agitated state before they even left the vehicle. He said, I'm going to get this expletive. He gets out of the car and starts sprinting towards Mr. Powell before the car even has a chance to fully stop. And officer Pepper could see from a distance clearly that officer Ortiz was continuing to beat Mr. Powell with a baton despite him having his hands in the air. So with all that together. So he should have gone in and dragged his partner off. What the correct form to use in order to stop him from inflicting violence on Mr. Powell is, I'm not sure, your honor. However, the law tells us that if it's if you're not sure, how is there a case that other than a high level of generality that would have prevented any of the harm because yelling at his partner wouldn't necessarily have prevented any harm. The only way he could have prevented his harm, right, would be immediately going in and pulling his partner off. And I just don't see a case that says that in the circumstances here where we're not talking about shots, we're not talking about tasers, we're talking about quickly inflicted physical harm, that there's something that would tell the partner that you got to go drag him off because that's the only thing that was going to help your client. Your honor, the legal standard is knowledge of a constitutional violation. And Pepper would get the knowledge of the constitutional violation from the same place Ortiz did, which would be Blankenhorn versus City of Orange. And in seeing him continue to use intermediate force on Mr. Powell, Blankenhorn should have put him on notice that he had a duty as a police officer to stop him from continuing to use that force. I see that my time is up. Actually, can I ask two questions? Is that okay, Judge? Yes, of course. Okay. Do you concede that your claim that Officer Pepper used excessive force in the Fourth Amendment, that's a new claim, the district court didn't allow it in screening, so we shouldn't consider that, right? Well, your honor, let's see, I have it in my notes here somewhere. Essentially, in the screening order, I believe it's section 1915A, the district court screens claims and not theories of claims when they are choosing to screen out claims that do not have merit. Fundamentally, our position is that the district court left open a Fourth Amendment claim against Officer Pepper. No, no, I'm sorry. This is not a new theory. This is a new claim, right? The excessive force was only against Ortiz. It was the failure to intervene that was against Pepper. So if you want to now come in and say, no, no, no, there's an excessive force Fourth Amendment claim against Pepper, that's a new claim. And I just don't think we should look at that in the first instance on appeal. That's not a new theory against Ortiz, right? That's not a new excessive force theory against Ortiz that Pepper also engaged in excessive force. Well, the district court, I believe their specific language was a Fourth Amendment failure to intervene claim against Pepper. Yes, I mean, if this court chooses to seize that as a direct excessive force claim as a new claim and not a new theory of liability, then certainly, yes, this court should not look at it for the first time on appeal. However, Officer Pepper still clearly is liable for failure to intervene. Did you have a second question? I did. Your summary judgment opposition mentions two other videos, but those are not before us, correct? Correct. Okay. We were not able to find those other videos. Oh, okay. All right. Thank you. All right. Thank you, counsel. We'll give you two minutes for your rebuttal. Thank you. Thank you. Thank you, Your Honor. Just a few quick points. The issue of Pepper's liability, and that's correct, it has been assumed that Pepper's liability is derivative. I believe that is the law of this circuit, and it is the law of other circuits as well, that if the primary actor in an excessive force case is not liable or is granted qualified immunity, then the secondary actor, the one who allegedly failed to intervene, is also not liable. And for that proposition, I cite Tobias v. Arteaga and Perez v. Fresno as cases that stand for that proposition. There are a number of other ones as well. In terms of what we just discussed, of course, there is no excessive force claim against Pepper in this case. It's not before this court. Mr. Powell did amend his complaint at one point after the screening order and did not add an excessive force claim against Pepper. It's just not here. In terms of Blankenhorn, I'd like to reiterate a point that I made earlier, and even though there may be some general similarities or general analogies that could be drawn to this case, Blankenhorn was a very different set of circumstances. And Mr. Blankenhorn was in a mall, had been allegedly accused of trespass. The officers, more or less without warning, gang-tackled him, punched him, and hobbled him after a minor offense. A very different set of background facts from this case where we had a high-speed car chase and resisting arrest, taking a fighting stance and having to be subdued. All right. We thank counsel for their arguments. The case just argued is submitted. We want to particularly thank Mr. Carlton and the Pepperdine Caruso School of Law and the clinic and your supervising attorneys. Thank you for your excellent job, and we look forward to seeing you as a member of the Bar in the future.
judges: BENNETT, KOH, MENDOZA